Stephanie PERKINS and
Louise Perkins

v.

CENTRAL MORTGAGE CO., As
Servicer for Fairbanks
Capital Corp.

No. Civ.A. 05–1524.

United States District Court,
E.D. Pennsylvania.

Feb. 1, 2006.

488

David A. Scholl, Newtown Square, PA, for Stephanie Perkins and Louise Perkins.

Anita J. Murray, Eckert Seamans Cherin & Mellott, LLC, Daniel S. Bernheim, Silverman Bernheim & Vogel, Philadelphia, PA, for Central Mortgage Co.

### MEMORANDUM AND ORDER

SAVAGE, District Judge.

The plaintiffs brought this action for statutory damages and rescission under the Truth in Lending Act ("TILA"), alleging that the defendants failed to honor their demand for rescission of a mortgage loan. Defendant Central Mortgage Company ("Central"), the loan servicer, has moved to dismiss the amended complaint,[1] raising two grounds: (1) the transaction was not rescindable because it was exempt as a residential mortgage transaction as defined by 15 U.S.C. § 1602(w); and, (2) the claims are barred by TILA's one year statute of limitations. The plaintiffs counter that the loan transaction was not an exempt residential mortgage transaction but rather a new loan subject to TILA's rescission requirements; and, while acknowledging that this action was not filed until more than two and a half years after the transaction, they contend that the date they demanded rescission, rather than the date of the transaction, triggers the running of the limitations period.[2] *Transcript of Oral Argument* (Jan. 18, 2006), at 33–34 ("*Tr.*").

The statute of limitations issue comes into play only if the plaintiffs have a cause of action on their rescission claim, which is dependent on whether the loan transaction was a residential mortgage transaction. If it was, there was no right of rescission and all claims are time barred. 15 U.S.C. § 1635(e). Thus, the pivotal question is whether the loan was a residential mortgage as defined in TILA and its implementing regulation, Regulation Z.[3]

After considering the allegations of the amended complaint in the light most favorable to the plaintiffs[4] in the context of TILA and the interpretive regulations, I conclude that the loan was a residential mortgage transaction that was not subject to rescission. Consequently, the statute of limitations began running on the date of the transaction, August 2, 2002. There-

---

1. The plaintiffs' original complaint named a contractor who subsequently settled with the plaintiffs. The contractor is not named as a defendant in the amended complaint. Cardinal Financial Company and Fairbanks Capital Corp., the lender and its assignee, were named as defendants in both the original and the amended complaints. They were later dismissed pursuant to Fed. R. Civ. P. 41.1(b).

2. An action under TILA must be brought within "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The parties disagree on when the violation occurred. The defendant contends that the occurrence was the date the credit transaction was consummated, while the plaintiffs argue that the violation occurred when the defendant refused to honor their letter of rescission.

3. Regulation Z was issued by the Board of Governors of the Federal Reserve System, which Congress expressly authorized to implement the Truth in Lending Act. 15 U.S.C. § 1604.

4. In examining motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we accept all of the well-pleaded allegations in the complaint as true and determine whether the plaintiffs may be entitled to relief under any reasonable reading of the complaint. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). Dismissal under 12(b)(6) can be granted only if the plaintiffs cannot prove any set of facts that would entitle them to relief. *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir.2002) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

fore, because the transaction was nonrescindable and all claims are time barred, I shall grant the motion to dismiss the amended complaint.

## Discussion

In November 2000, the plaintiffs took out a loan to finance both the purchase of land and the cost of constructing a new home on the land. On August 2, 2002, after their contractor walked off the job before finishing, they obtained new financing from another lender, Cardinal Financial Company, to pay off the first loan and to complete the construction. *Am. Compl.* ¶ 8; *Tr.* at 39. Both loans were secured by mortgages against the property. It is the second loan that is at issue.

On November 29, 2004, the plaintiffs, through their attorney, sent a letter rescinding the transaction to Central and the loan assignee, Fairbanks Capital Corporation, claiming that they had not received a notice of their right to cancel the loan, the disclosures made in the financing documents were incomplete and erroneous, and certain charges were illegal and excessive. *Am. Compl.* ¶ 9, Ex. B. On January 24, 2005, Central responded that the loan was not rescindable. *Am. Compl.* ¶ 15. The plaintiffs then filed this action on April 4, 2005.

TILA requires lenders to make certain disclosures in consumer credit transactions where a security interest is retained or acquired in property used as the borrower's principal dwelling. *See* 15 U.S.C. § 1635(a). The borrower has the right to rescind the transaction until midnight of the third business date following consum-

mation of the transaction or delivery of the required information and disclosures. *Id.* Notice of the right to rescind is one of the disclosures that must be made. *Id.*

Section 226.23 of Regulation Z, which covers the right of rescission for closed-end credit transactions [5] such as this one, gives the borrower three years to exercise the right of rescission if the borrower does not receive appropriate notice of the right to rescind. 12 C.F.R. § 226.23(a)(3). Thus, absent delivery of the requisite notice in a covered transaction, three days to exercise the right of rescission becomes three years.

■ The right to rescind does not apply to residential mortgage transactions. 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1). Hence, there is no obligation to deliver a notice of right of rescission in connection with such transactions, and the one year statute of limitations begins running on the day of the transaction.

A "residential mortgage transaction" is defined in TILA as:

> a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C. § 1602(w).

The defendant contends that the transaction at issue is an exempt residential mortgage transaction because it involved

---

**5.** The term "closed-end credit" is defined by exclusion. "It includes any credit arrangement that does not fall within the definition of open-end credit." 12 C.F.R. pt. 226, Supp I, Subpart A, § 226.2(a)(11)–1. "The term 'open end credit plan' means a plan under which the creditor reasonably contemplates re-

peated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i); *See Bartholomew v. Northampton Nat'l Bank of Easton*, 584 F.2d 1288, 1296 (3d Cir.1978).

an interest created to finance the "acquisition or initial construction" of the plaintiffs' dwelling. The plaintiffs argue that because they had owned the property for over two years, the current transaction was not one in which they acquired the home, and, hence, not a residential mortgage transaction.

Both parties look to the Federal Reserve Board's Official Staff Interpretations [6] for clarification of the meaning of a residential mortgage transaction. The plaintiffs rely on Comment 5; and the defendant, on Comments 4 and 6.

Comment 4, entitled "Construction financing," reads in pertinent part:

If a transaction meets the definition of a residential mortgage transaction and the creditor chooses to disclose it as several transactions under § 226.17(c)(6), each one is considered to be a residential mortgage transaction, even if different creditors are involved.

For example: ...

 • *One creditor finances the initial construction of the consumer's principal dwelling and another creditor makes a loan to satisfy the construction loan and provide permanent financing. Both transactions are residential mortgage transactions.* (emphasis added).

12 C.F.R. pt. 226, Supp I, Subpart A, § 226.2(a)(24)4.

The plaintiffs insist, without explanation, that this comment does not apply. However, the above example in the comment explains that two loans by different lenders, one later than the other, secured by the same property are both residential mortgages for purposes of the exemption.

Hence, mere passage of time between the two loans does not necessarily preclude both being considered residential mortgage transactions.

The relevant language of Comment 6, the other reference relied upon by the defendant, follows:

A transaction meets the definition of this section *if any part of the loan proceeds will be used to finance the acquisition or initial construction of the consumer's principal dwelling.* For example, a transaction to finance the initial construction of the consumer's principal dwelling is a residential mortgage transaction even if a portion of the funds will be disbursed directly to the consumer or used to satisfy a loan for the purchase of the land on which the dwelling will be built. (emphasis added).

12 C.F.R. pt. 226, Supp I, Subpart A, § 226.2(a)(24)–6.

 Comment 6 makes clear that not all of the loan proceeds must be dedicated to the construction of the dwelling. As long as any part of the loan proceeds is used for the construction, the loan qualifies as a residential mortgage transaction. Again, the plaintiffs' argument that they had obtained a full construction loan two years earlier is of no consequence. When it promulgated Regulation Z, the Board contemplated that a later mortgage could replace a temporary one used to finance the first step in a process ultimately ending in the erection of the borrower's residence.

The plaintiffs do not dispute that the proceeds of this mortgage loan were used to satisfy the first loan and to pay for completion of the construction. *Tr.* at 39. In an effort to remove this transaction

6. Congress delegated to the Federal Reserve Board the power to fill gaps in the statute. *Ortiz v. Rental Mgmt., Inc.,* 65 F.3d 335, 339 (3d Cir.1995). Thus, Federal Reserve Board staff opinions are considered dispositive unless they are demonstrably irrational. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565–8, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

from the definition of a residential mortgage, they argue that the loan was not for "initial construction" of their residence. Focusing on the temporal rather than the physical aspect of the construction, they contend the first loan was for the construction, and this transaction, coming two years later, could not have been for financing the "initial" construction. *Tr.* at 35–6. When pressed at oral argument to define at what point construction is no longer "initial," plaintiffs' counsel pointed to the period of time that had elapsed between the two transactions while ignoring that construction had not been completed at the time of the second loan. *Tr.* at 43–4. He conceded that he could not specify the precise stage short of when a dwelling becomes habitable that would no longer be considered "initial construction." *Tr.* at 42–4.

■ The legislative history of TILA supports the conclusion that all stages of construction up to the time when the residence becomes habitable are within the meaning of initial construction. Congress sought to protect consumers from, among other things, abusive practices associated with home improvement loans. *See Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 221, 222 n. 19, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981); *N.C. Freed Co., Inc. v. Bd. of Governors of the Fed. Reserve Sys. & Fed. Trade Comm'n,* 473 F.2d 1210, 1213–14 n. 12 (2d Cir.1973). Consequently, Regulation Z recognizes the difference between transactions where a borrower is constructing or purchasing an already constructed residence and one where she is improving or renovating an existing residence. Thus, I conclude that a residential mortgage transaction includes all stages of construction up to the time of completion.

■ Plaintiffs rely upon the exclusionary language in Comment 5. Entitled "Acquisition," the comment reads:

I. A residential mortgage transaction finances the acquisition of a consumer's principal dwelling. *The term does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title.* (emphasis added).

ii. Examples of new transactions involving a previously acquired dwelling include the financing of a balloon payment due under a land sale contract and an extension of credit made to a joint owner of property to buy out the other joint owner's interest. In these instances, disclosures are not required under § 226.18(q) or § 226.19(a) (assumability policies and early disclosures for residential mortgage transactions). However, the rescission rules of §§ 226.15 and 226.23 do apply to these new transactions.

iii. In other cases, the disclosure and rescission rules do not apply. For example, where a buyer enters into a written agreement with the creditor holding the seller's mortgage, allowing the buyer to assume the mortgage, if the buyer had previously purchased the property and agreed with the seller to make the mortgage payments, § 226.20(b) does not apply (assumptions involving residential mortgages).

12 C.F.R. pt. 226, Supp I, Subpart A, § 226.2(a)(24)–5.

At first glance, Comment 5 seems to conflict with Comments 4 and 6. A closer examination, however, reveals that there is a distinctive difference. Comment 5, unlike Comments 4 and 6, does not address construction of the borrower's principal dwelling. It refers only to the acquisition of an ownership interest in a dwelling which presumably was already constructed at the time of the transaction. The excep-

tion from the definition of a residential mortgage transaction contemplated by this comment is one where the borrower already has a partial interest in a completed dwelling at the time of the transaction. Thus, Comment 5 is not applicable to this transaction where the construction was incomplete and the plaintiffs already had full legal title to the property.

### Conclusion

Because the loan in this case was to complete the construction of the plaintiffs' principal dwelling, it was a residential mortgage transaction as defined by TILA. As such, it was nonrescindable under TILA. Therefore, I shall grant the motion to dismiss the amended complaint.[7]

### ORDER

**AND NOW**, this 1st day of February, 2006, upon consideration of the Motion of Defendant Central Mortgage Company to Dismiss the Amended Complaint (Document No. 11) and the plaintiffs' response, and after oral argument, it is **ORDERED** that the motion is **GRANTED** and the Amended Complaint is **DISMISSED**.

---

7. In a supplemental memorandum of law in opposition to the motion to dismiss and at oral argument, plaintiffs' counsel asserted a new theory that is not set out in the original or the amended complaints. Despite the specific allegation in the amended complaint that the plaintiffs did not receive a notice of rescission, the plaintiffs now argue that the lender created a right of rescission, independent of TILA, by giving this notice at the closing. In other words, they claim that Cardinal created a common law contractual right of rescission when it prepared the notice, and Central, as one if its assignees, is bound by the creation of that right. Thus, plaintiffs argue that even

if this is a residential mortgage transaction, the original lender made a right of rescission part of the contract by providing notice of such a right, albeit the plaintiffs knew nothing about it until more than two years after the transaction. *Tr.* at 8–9.

This new contract theory has not been pleaded by the plaintiffs. It is not presented as a supplemental explanation of the cause of action stated in the amended complaint. It is proffered as a separate cause of action. Therefore, I shall not entertain this recent argument that was not raised in the amended complaint.